UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KEVIN M. THOMPSON, | ) No. ED CV 05-930-PLA |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 5, 2005, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on October 24, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 5, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on December 28, 1960. [Administrative Record ("AR") at 76.] He has a twelfth grade education. [AR at 100, 221-22.] Plaintiff previously worked as a custodian, jewelry repairer, and bus driver. [AR at 95, 236.]

On August 26, 2002, plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income payments, in which he alleged he has been unable to work since December 15, 2001, due to depression, a sleep disorder, and anxiety attacks. [AR at 76-79, 93-102, 206-08.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on June 29, 2004, at which plaintiff appeared with counsel and testified on his own behalf. A vocational expert ("VE") also testified. [AR at 218-41.] On July 16, 2004, the ALJ determined that plaintiff was not disabled because he can perform entry level work that involves working with objects rather than people.[1] [AR at 13-18.] When the Appeals Council denied review on August 8, 2005, the ALJ's decision became the final decision of the Commissioner. [AR at 5-8.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion. Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision,

---

[1] The ALJ found that plaintiff has no physical restrictions. [AR at 18.]

the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are disabled for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a severe impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

the sufficient residual functional capacity[2] to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. [AR at 14, 17.] At step two, the ALJ concluded that plaintiff has the severe impairments of depression and anxiety. [Id.] At step three, the ALJ found that the impairments do not meet or equal any impairments in the Listings. [AR at 15, 18.] The ALJ further determined that plaintiff retains the residual functional capacity to perform entry level work that involves working with objects rather than people. [Id.] At step four, the ALJ concluded that plaintiff is unable to perform his past relevant work. [AR at 17, 18.] At step five, the ALJ concluded that there are a significant number of jobs in the local and national economies that he can perform. [Id.] Accordingly, the ALJ found plaintiff not disabled. [Id.]

/
/
/
/
/
/

---

[2] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

V.

**THE ALJ'S DECISION**

Plaintiff raises the following contentions: (1) the ALJ failed to properly consider all of the medical evidence in the record; (2) the ALJ improperly rejected plaintiff's subjective complaints; and (3) the ALJ failed to consider all of the vocational evidence. Joint Stipulation ("Joint Stip.") at 4-5. For the reasons discussed below, the Court agrees that the ALJ's consideration of the evidence was flawed, and determines that remand of this matter is appropriate.

According to the record, plaintiff underwent a comprehensive psychiatric evaluation on November 21, 2002, that was conducted by consultative psychiatrist, Dr. Richard Hicks. [AR at 130-34.] Dr. Hicks diagnosed plaintiff with long-standing depression with suicidal thoughts, tendencies, and attempts. [AR at 133.] After conducting a battery of psychiatric tests, the doctor concluded that plaintiff is capable of performing simple and repetitive tasks, accepting simple instructions from supervisors, and interacting to some degree with coworkers and the public. Dr. Hicks noted, however, that plaintiff's "consistency and regularity would be somewhat unpredictable." [AR at 134.] The doctor further commented that plaintiff needs more vigorous antidepressant medication and treatment, and that with the proper treatment, he may recover from his depressive syndrome. [Id.]

The record also contains a mental residual functional capacity assessment completed by non-examining state agency physicians on December 4, 2002. [AR at 150-53.] The portion of the assessment titled "Summary Conclusions" is comprised of four different categories: "understanding and memory," "sustained concentration and persistence," "social interaction," and "adaptation." In turn, each category has a list of abilities which can be rated as "not significantly limited," "moderately limited," "markedly limited," or "no evidence of limitation."[3] According to the assessment, the state agency physicians found that plaintiff experiences moderate limitations in understanding and remembering detailed instructions. [AR at 150.] With respect to sustained concentration and persistence, the state agency physicians indicated that plaintiff has moderate

---

[3] An ability can also be marked as "not ratable on available evidence."

limitations in being able to carry out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, working in coordination with or proximity to others without being distracted by them, completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. [AR at 150-51.] With respect to social interactions, the physicians found that plaintiff is moderately limited in being able to interact appropriately with the general public, and with respect to adaptation skills, that plaintiff has moderate limitations with being able to respond appropriately to changes in the work setting. [AR at 151.] In the final section of the assessment titled "Functional Capacity Assessment," the following conclusion is set forth: "Can sustain simple repetitive tasks with adequate pace and persistence. Can adapt and relate to coworkers and [supervisors]. Cannot work with public." [AR at 152.]

On February 11, 2003, a Psychiatric Review Technique Form ("PRTF") was completed by a licensed clinical social worker and signed off by treating physician, Dr. Funkenstein. [AR at 159-62.] According to the PRTF, plaintiff has moderate limitations with respect to activities of daily living, marked limitations with respect to maintaining social functioning, and extreme limitations with respect to maintaining concentration, persistence, or pace. [AR at 162.] It is also noted in the PRTF that plaintiff would have four or more episodes of decompensation of extended duration. [Id.]

Plaintiff took part in a second psychiatric evaluation on April 9, 2003. [AR at 154-57.] The examining psychiatrist, Dr. Douglas Engelhorn, diagnosed plaintiff with dysthymia and probable major depression, recurrent type. [AR at 156.] Upon testing, Dr. Engelhorn found no cognitive impairment, and opined that if plaintiff put forth reasonable effort, he would be able to do simple, repetitive tasks. [AR at 157.] The doctor also concluded that, due to plaintiff's passivity and lack of enthusiasm, he would have difficulty relating to peers and supervisors, but that plaintiff could be expected to make routine adjustments in the workplace. [Id.] According to Dr. Engelhorn, plaintiff would likely benefit from medications, psychiatric treatment and cognitive therapy. [Id.]

During the hearing, the ALJ elicited testimony from a vocational expert, who testified that if plaintiff had the mental RFC ultimately assigned by the ALJ -- that is, if he could perform entry level work that is restricted to working with objects rather than people -- he would be capable of performing jobs such as a cleaner and warehouse laborer. [AR at 236-37.] The ALJ described another hypothetical, in which he asked the VE to assume the individual has the same mental RFC (i.e., entry level work involving objects), but adding the factor that the individual was "going to be off task at least 20 percent of the time due to panic disorder or anxiety disorder." [AR at 237.] According to the VE, an individual with these limitations would not be capable of full-time employment. [Id.]

Plaintiff's attorney then questioned the VE, and posed the following hypothetical that included limitations checked off by the state agency physicians in the December 4, 2002, mental residual functional capacity assessment:

> [T]he person has moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and they are moderately limited in their ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods...

[AR at 239.] The attorney described "moderate" as "not a full-time constant problem, but ... more than just a mild thing...[I]t's going to affect them in ... their ability to adhere to the tasks." [Id.] He further explained that, for purposes of the hypothetical, "moderate" was to mean that the individual would be affected "at least ten percent of the time."[4] [Id.] The VE testified that a person with those limitations would be unable to work because the "key factors of showing up and completing tasks" would be impacted. [AR at 240.]

In the decision, the ALJ fairly summarized the conclusions set forth in the above psychiatric reports, as well as the relevant treating notes, before determining that plaintiff is capable of performing entry level work that involved working with objects rather than people. [AR at 15-16.]

---

[4] When plaintiff's attorney offered this explanation for the term "moderate," the ALJ did not offer an alternate definition. [See AR at 239-40.] The Court presumes that the ALJ was therefore in agreement with the attorney's definition.

In formulating this mental RFC, the ALJ expressly rejected the conclusions from Dr. Funkenstein's PRTF on the basis that there were no supporting clinical findings to justify the limitations set forth therein, and that the conclusions were "inconsistent" with the other opinions in the record.[5] [AR at 16.] While it is apparent that the ALJ instead relied upon the other consulting and nonexamining physicians' opinions, the ALJ did not expressly state the weight given to any of those opinions, or explain whether any portion of those opinions was rejected.

Social Security Ruling 96-6p[6] specifically requires that an explanation of the weight given to the opinions of state agency consultants be included in the ALJ's final decision. See Social Security Ruling 96-6p, 1996 WL 374180.  In this instance, although it appears that the ALJ accepted the conclusion of the nonexamining state agency physicians that plaintiff can perform simple work and cannot work with the public, there is no indication that the ALJ took into account the specific limitations set forth in the mental residual functional capacity assessment (i.e., the moderate limitations in categories such as "concentration and persistence" and "adaptation"). The VE's testimony highlights the importance of those limitations.  If the term "moderate limitation" is understood to mean that plaintiff would be affected at least ten percent of the time, and if all of the moderate limitations set forth by the state agency physicians are credited as true, the VE explained that plaintiff would be precluded from full-time employment.[7] [See AR at 239-40.]

---

[5] Plaintiff contends that the ALJ's determination that Dr. Funkenstein's opinion is inconsistent with the other opinions is "simply not true." Joint Stip. at 7.  Because the Court agrees with plaintiff that the ALJ has failed to properly address all of the relevant medical evidence (namely, certain portions of the mental residual functional capacity assessment by the state agency physicians as well as Dr. Hicks' conclusion that plaintiff's consistency and regularity would be unpredictable), the Court will not consider at this time whether the ALJ's rejection of Dr. Funkenstein's opinion was based on legally sufficient reasons.  See infra. Rather, upon remand, the ALJ should review Dr. Funkenstein's opinion to determine whether, after considering all of the findings of the examining and nonexamining physicians, it is in fact inconsistent with the record.

[6] Social Security Rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[7] The Court notes that while the state agency physicians found that plaintiff has moderate limitations with respect to sustained concentration and persistence, they still opined that he would

By ignoring the bulk of the limitations set forth in the mental RFC assessment, the ALJ effectively rejected a portion of the state agency physicians' opinion. It follows, therefore, that the ALJ did not provide any reasons for the rejection. See Social Security Ruling 96-6p, 1996 WL 374180 (ALJ "may not ignore these opinions [made by state agency physicians] and must explain the weight given to the opinions in their decisions"); see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason [citation omitted], an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper."). The ALJ is not permitted to selectively choose from an opinion to support the RFC determination, while ignoring the remaining critical findings.[8] See, e.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore competent evidence in the record in order to justify his conclusion). Nor did the ALJ in his decision address the VE's testimony that plaintiff would be unable to work if he were limited as specifically described in the mental RFC assessment. See Andrews, 53 F.3d at 1043-44 (9th Cir. 1995) (remanding case for determination of vocational ability based upon a hypothetical that accurately reflects claimant's limitations in certain "adaptation" categories).

Remand is therefore in order. If plaintiff is, in fact, limited as indicated in the assessment, it appears from the VE's testimony that plaintiff could be disabled for social security purposes. The ALJ is thus directed to review the limitations discussed above to resolve this issue. If the ALJ ultimately rejects some or all of the limitations set forth by the state agency physicians, he must premise the rejection on legally sufficient reasons. Because the result of this determination may

---

have "adequate" pace and persistence. The VE nevertheless concluded that an individual with plaintiff's moderate limitations could not perform full-time work. The ALJ does not address this issue, or his failure to include the moderate limitations in the RFC.

[8] The Court also observes that consultative examining psychiatrist Dr. Hicks opined that plaintiff's "consistency and regularity would be somewhat unpredictable." [AR at 134.] It appears that this conclusion is in line with the moderate limitations in "concentration and persistence" set forth by the nonexamining state agency physicians. In discussing Dr. Hicks' evaluation, however, the ALJ does not address this specific finding. [See AR at 15.] Upon remand, the ALJ is directed to do so, and if necessary, include it in the VE's hypothetical as well.

impact the assessment of plaintiff's credibility, and in turn the formulation of the RFC, plaintiff's remaining issues will not be addressed at this time.

## VI.

## **REMAND IS APPROPRIATE**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to evaluate the entire opinion of the nonexamining state agency physicians and the findings set forth by Dr. Hicks regarding plaintiff's consistency and regularity. The ALJ must also indicate the weight given to the various physicians' opinions contained in the record. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.[9]

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: November 2, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[9] In light of the Court's remand order, the Court does not address plaintiff's remaining contentions of error.